UNITED STATES OF AMERICA
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY JONES

    Plaintiff

v.

GOODWILL INDUSTRIES OF
NORTHERN MICHIGAN, INC.

    Defendant
_____/

Case No.

Hon:

Attorneys for plaintiff:
ROUMEL LAW
Nicholas Roumel (P37056)
4101 Thornoaks Dr.
Ann Arbor MI  48104
nick@roumel-law.com

## COMPLAINT AND JURY DEMAND

Plaintiff makes her complaint of disability discrimination and retaliation in employment, as follows:

### PARTIES/JURISDICTION/VENUE

1. Plaintiff Amy Jones is a resident of Traverse City, Michigan, in the Western District of Michigan. She is formerly known as Amy Sanchez, and was so named for all events relevant to this lawsuit.

2. Defendant Goodwill Industries of Northern Michigan, Inc. ("Goodwill") is registered with the State of Michigan as a domestic nonprofit corporation. Its resident agent is Daniel Buron, 2279 S. Airport Rd. W., Traverse City MI 49684.

3.  The events giving rise to this lawsuit primarily occurred in Traverse City, Grand Traverse County, Michigan.

4.  The claims in this case arise under the Americans with Disabilities Act, ["ADA," 42 USC § 12112 *et seq.*] the Family Medical Leave Act, ["FMLA," 29 USC § 2601 *et seq.*] and Michigan's Persons With Disabilities Civil Rights Act. ["PWDCRA," MCL § 37.1101 *et seq.*]

5.  Ms. Jones filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission on or about March 8, 2023, and received a Right to Sue letter from the EEOC dated November 29, 2023. This lawsuit is filed within 90 days of receipt of that letter.

6.  Jurisdiction is proper in this court under 28 U.S.C. §1331 (federal question jurisdiction). Supplemental jurisdiction over Plaintiff's state law claim is proper pursuant to 28 U.S.C. §1367 as this claim arises from the same case and controversy.

7.  Venue is proper in the Western District of Michigan per 28 USC § 1391 (b) (1) and (2), as the cause of action occurred in Grand Traverse County, Michigan, in the Western District of Michigan.

## FACTUAL ALLEGATIONS

**Ms. Jones is Hired by Defendant**

8.  Ms. Jones possesses a Bachelors in Psychology and a Master of Social Work degree, and is a LLMSW (Limited License Masters of Social Work) with the State of Michigan.

9.  She was hired by Defendant effective June 22, 2020, until her termination December 1, 2022.

2

10. She was hired by Defendant in the position of a Human Services Worker, part time, 25 hours per week, at the front desk. This charge alleges two separate disabilities and two separate charges arising from each.

**Ms. Jones' Initial Disclosure of Disability**

11. During the course of her employment, on separate occasions, Ms. Jones disclosed disabilities to the Defendant.

12. The first is that Ms. Jones had been diagnosed with ADD/ADHD and severe anxiety, for which she was under treatment.

13. On or about September 26, 2021 she sent an email to Defendant disclosing her disabilities and at the same time, complaining about the treatment she was receiving from her then-interim director, Nora Dunlop, generally alleging bullying and hostile behavior. She also mentioned, in that email, that she had disclosed her disabilities to Ms. Dunlop, and that she had expressed hostility to the disclosure.

14. In response, the Defendant did accommodate Ms. Jones' ADHD and anxiety, as set forth in a letter from Allison Cavanaugh, Director of HR, dated October 21, 2021, approving certain "accommodations for the following difficulty processing information, following through with instructions, organization problems, failure to give close attention to details - (accommodations were - checklists, job coach, meetings, prioritization, identifying strengths/not focusing on weaknesses)."

**Ms. Jones' Foot Surgeries and Requests for Accommodation and FMLA Leave**

15. In the spring of 2022, Ms. Jones required separate surgeries on each foot.

16. After the first one, on or about May 4, 2022, she was released to work

with her doctor with the following accommodations: "no weight bearing, ice and elevate foot, can return light duty 5/7. [May 7]"

17. Ms. Jones returned to work and was able to perform the essential duties of her position with these reasonable accommodations.

18. Later that summer, Ms. Jones required surgery on the other foot, which was scheduled for August 25, 2022.

19. On August 18, 2022, she asked for FMLA paperwork to take to her physician.

20. On August 24, 2022, Ms. Jones' physician sent Defendant a notice advising that the surgery would be scheduled for August 25, and that Ms. Jones was estimated to be off work from 6-12 weeks.

21. However, the surgery went well and Ms. Jones recovered quickly, and on August 31, 2022, she texted her operations manager, Tracy Davis, asking if she could return on September 6, 2022.

22. Ms. Davis refused, saying she couldn't put Ms. Jones on the schedule until she obtained an updated note from her physician, since the original note estimated she would be off work from 6-12 weeks.

23. Accordingly, on September 2, 2022, Ms. Jones' physician sent a revised Return to Work note stating that Ms. Jones could return to work on September 6, 2022 with the accommodations that she be able to ice and elevate her foot.

24. These were essentially the same accommodations that Defendant had granted after her first foot surgery; in fact, Ms. Jones believed that her condition was less serious after this surgery than her first foot operation.

4

25. When she did not hear from Defendant, Ms. Jones followed up on September 6 email to Defendant, stating:

> I am emailing with a request to return to work. I spoke with Tracy today and she stated that I am not able to do my job. They stated that they are basing this on my doctor's note. My doctor's note was not specific on how long that I had to ice and elevate my foot therefore I can perform my other duties as assigned around this. Nora also stated that I am not able to get up quickly as needed but this is untrue. Nora also stated that I cannot return to work until I have NO accommodations. Why?! I do not understand why my accommodations cannot be accommodated this time as they were last time for the same surgery so I can return to work. I would like to know what needs to be stated on a doctor's note in order to be able to return to work. I was told by Tracy to talk to HR, I did so and spoke with Claudia and did not receive any form of an answer other than I need to talk to Nora. I attempted to call Nora and she said that I cannot come back until I have absolutely no restrictions. I proceeded to ask Nora more questions and she just told me to talk to HR again. I have been with Goodwill for more than 2 years and have never had an issue. I can perform my job and feel that I am being extremely discriminated against. I need to know what to do and do not understand why this is so much different than my last surgery when no one ever stated that there was a performance issue on my part or that there was an issue with my performance while I received the same accommodations before for the same surgery. I am extremely confused and frustrated. Please let me know ASAP what I need to do to come back to work.

26. Ms. Davis replied to Plaintiff that she would not be allowed to return to work, that she couldn't do the job, because she "can't get up quickly."

27. Ms. Jones reiterated that she was able to return, with only the proviso that she have to ice and elevate her foot.

28. Ms. Jones told Ms. Davis that she believed she was being discriminated against, and asked what she needed to do to be able to return to work as soon as possible.

29. Ms. Davis responded that she was resigning soon and that Ms. Jones would have to deal with Ms. Dunlop, about whom Ms. Jones had previously complained when Ms. Dunlop was her interim director.

30. Similarly, Ms. Dunlop stated Ms. Jones could not return to work until she had "no restrictions – no walking boot, no scooter, no cast, no nothing."

5

31.     On September 6, 2022, Claudia Stedman, Defendant's HR Generalist, also advised Ms. Jones that she would not be permitted to return to work. She further stated that the September 2 note from her physician was "drastically different" from the August 24, 2022 note, and did not "analyze the particular functions and physical demands of the position, discuss the restrictions in detail, or address the prior assessment that the employee would be incapacitated and unable to return to work for a period of 12 weeks."

32.     Because of those alleged discrepancies or deficiencies, Ms. Stedman advised she would need to send Ms. Jones' physician a questionnaire and position description to be returned September 21, 2022, and she did prepare such a document.

33.     However, on information and belief, Ms. Stedman never sent these documents to Ms. Jones' physician. There is no corresponding cover letter or fax cover in Ms. Jones' personnel records indicating that it was sent to her physician, and the position description has a fax header from May, 2022, presumably from the first foot surgery.

34.     Ms. Stedman separately prepared a package of documents to be mailed to Ms. Jones, dated September 13, 2022, stating in relevant part:

> Dear Amy,
>
> The purpose of this letter is to inform you that your request for a leave under the federal Family and Medical Leave Act (FMLA) for the period 8/25/2022 through 11/25/22 has been approved through 11/17/22 which is the 12 week period allowed. … Additionally, since you have requested to return to work prior to the end of your leave, I have enclosed an Accommodation Questionnaire/Fitness-For-Duty Update. Please forward this request to your provider and have it returned to me to determine if your restrictions can be accommodated.
>
> You are expected to return to duty no later than 11/18/2022 at your regularly scheduled work time. If, for any reason, you are unable to return to work on this date, you must notify Claudia Stedman, Human Resources Generalist, prior to the return date.

35.     The letter was sent by Ms. Stedman to Ms. Jones via certified mail, return receipt requested.

36. Ms. Stedman did not notify Ms. Jones that this letter was coming, nor did she otherwise disclose to her the substance of the communication in this letter, or that she would have to personally deliver the enclosed package for her physician to return by September 21, 2022.

37. The package for the physician included a detailed four-page questionnaire and a two-page position description for the physician to complete.

38. Because Ms. Jones did not know to expect the letter, although she received a notice from the post office to pick up certified mail, she did not pick up the letter or receive it because she did not know who it was from or what it was regarding.

39. Not only did Ms. Jones not have the benefit of seeing this letter, she was unable to take the enclosed questionnaire and position description to her physician by the arbitrary deadline of September 21 that was proposed by Defendant.

40. Because of Defendant's failure to communicate, Ms. Jones was so unaware of her status, that she applied for unemployment compensation on or about September 14, 2022, because she was not allowed to return to work despite being able to do so, and believed she had been terminated.

**Ms. Jones Actually Was Terminated on December 1, 2022**

41. Defendant sent a second certified letter dated December 1, 2022 to Ms. Jones' home, terminating her employment as of November 21, 2022 for not returning to work.

42. As with the previous certified letter, Ms. Jones did not receive this, not responding to the notice as she again did not expect the letter nor know who it was from. She only learned that she was terminated when she subsequently received an email inviting her to come in for an exit interview related to her termination.

**LEGAL ALLEGATIONS**
**Count I: Disability Discrimination and Failure to Accommodate**
**(Americans with Disabilities Act)**

43. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the Americans with Disabilities Act, as she had physical and/or mental impairments that substantially limited her in the performance of major life activities.

44. These impairments included her anxiety and ADD/ADHD and her foot conditions that required separate surgeries.

45. Plaintiff was substantially limited in the major life activities of thinking, learning, memory, and organization (related to her anxiety and ADD/ADHD) and walking and mobility (foot surgeries).

46. Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and did perform satisfactorily.

47. Plaintiff made requests for reasonable accommodations as set forth above, including assistance with organization (related to her anxiety and ADD/ADHD) and to ice and elevate her feet, and possibly use a scooter (foot surgeries)

48. Such accommodations would not have been unduly burdensome to Defendant.

49. Defendant is an employer within the meaning of the Americans with Disabilities Act.

50. Defendant knew or had reason to know of Plaintiff's disabilities as she advised them contemporaneously, and Defendant made frequent references to her conditions.

51. Defendant failed to accommodate Plaintiff, failed to engage in the interactive process required under the ADA, and otherwise subjected Plaintiff to adverse employment actions based on her disabilities as described above, including but not limited to threats of demotion, and ultimately her discharge.

52. As a result, Plaintiff was damaged as set forth herein and below.

**Count II: Disability Discrimination and Failure to Accommodate**
**(Michigan's Persons With Disabilities Civil Rights Act)**

53. Plaintiff has or had disabilities within the meaning the PWDCRA.

54. Plaintiff was able to perform her job with or without reasonable accommodations, and did perform satisfactorily.

55. Plaintiff's disabilities were unrelated to her ability to perform the duties of her job.

56. Defendant discriminated against Plaintiff on the basis of her disabilities.

57. As a result, Plaintiff was damaged as set forth herein and below.

### Count III: Retaliation
### (Americans with Disabilities Act)

58. Plaintiff engaged in protected activity when, in good faith, she requested accommodations for her disabilities, and expressed that Defendant was discriminating against her because of her disabilities, on more than one occasion, as described above.

59. This exercise of protected rights was known to Defendant.

60. In retaliation for complaining about disability discrimination, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to termination.

61. Defendants' reasons for taking these actions were retaliatory and not legally justified.

62. As a result, Plaintiff was damaged as alleged herein and below.

### Count IV: Retaliation
### (Persons With Disabilities Civil Rights Act)

63. Plaintiff engaged in protected activity when she took the actions described above.

64. This exercise of protected rights was known to Defendant.

65. In retaliation for complaining about disability discrimination, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to termination.

66. As a result, Plaintiff was damaged as alleged herein and below.

### Count V:  Family And Medical Leave Act
### (Interference)

67. Defendant was an employer under the FMLA.

68. Plaintiff was an eligible employee under the FMLA, in that she had a serious health condition and was otherwise entitled to take FMLA leave.

69. The medical conditions described above constituted (a) serious health condition(s).

70. Plaintiff gave Defendant appropriate notice of these conditions, and followed up by making a request for leave under the FMLA after her second foot surgery, and to be able to return to work September 6, 2022.

71. Defendant interfered with Plaintiff's right to unpaid leave by denying this request, imposing a longer leave on her without her knowledge, not communicating with her physician, and otherwise as described above.

72. As a result, Plaintiff was damaged as described herein and below.

### Count VI:  Family And Medical Leave Act
### (Retaliation)

73. Plaintiff engaged in statutorily protected activity by requesting protected leave as defined by the FMLA.

74. After learning of Plaintiff's protected activity, Defendant refused her request to have a short leave and return September 6, 2022, refused to accommodate her, forced her to stay off work, failed to adequately communicate with her or her physician, and ultimately terminated her employment.

75. This course of conduct was a willful violation of the FMLA.

76. As a result, Plaintiff was damaged as described herein and below.

## DAMAGES

77. Defendant's actions were done willfully with reckless indifference to Plaintiff's right to be free from illegal discrimination and retaliation.

78. Defendant's actions directly caused and proximately caused Plaintiff the following damages:

    a. *economic damages*: including but not limited to past and future lost wages; lost fringe benefits such as various types of insurance, retirement, bonuses, pay raises, training and promotions; and consequential damages as may be proven.

    b. *non-economic damages*: including but not limited to embarrassment, humiliation, outrage, pain and suffering, harm to reputation, mental and emotional distress; exemplary damages to the extent allowed by law; and punitive damages as may be allowed by law.

79. Under the ADA and PWDCRA, an aggrieved person may be entitled to compensatory damages, injunctive relief, and attorney fees; a person may also recover punitive damages under the ADA for intentional discrimination.

80. Under FMLA, an aggrieved person may also be entitled to liquidated damages.

### Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

## Relief Requested

*W H E R E F O R E*   Amy Jones requests this honorable court grant her the following as permitted by law and equity:

    a.    compensatory damages;

    b.    punitive damages;

    c.    liquidated damages;

    d.    equitable and/or injunctive relief;

    e.    compensable costs, interest, and reasonable attorney fees;

    f.    any other relief as permitted under the law to vindicate her rights as a person with a disability.

Respectfully submitted,
Attorneys for Amy Jones

**ROUMEL LAW**

*/s/ Nicholas Roumel*

February 26, 2024        Nicholas Roumel, Attorney